(Slip Opinion)             OCTOBER  TERM,  2007                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GREENLAW *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 07–330.   Argued April 15, 2008—Decided June 23, 2008

Petitioner Greenlaw was convicted of seven drug and firearms charges and was sentenced to imprisonment for 442 months.  In calculating this sentence, the District Court made an error.  Overlooking this Court's controlling decision in *Deal* v. *United States*, 508 U. S. 129, 132–137, interpreting 18 U. S. C. §924(c)(1)(C)(i), and over the Government's objection, the District Court imposed a 10-year sentence on a count that carried a 25-year mandatory minimum term.  Greenlaw appealed urging, *inter alia*, that the appropriate sentence for all his convictions was 15 years.  The Government neither appealed nor cross-appealed.   The Eighth Circuit found no merit in any of Greenlaw's arguments, but went on to consider whether his sentence was too low.  The court acknowledged that the Government, while it had objected to the trial court's error at sentencing, had elected not to seek alteration of Greenlaw's sentence on appeal.  Nonetheless, relying on the "plain-error rule" stated in Federal Rule of Criminal Procedure 52(b), the Court of Appeals ordered the District Court to enlarge Greenlaw's sentence by 15 years, yielding a total prison term of 662 months.

*Held*: Absent a Government appeal or cross-appeal, the Eighth Circuit could not, on its own initiative, order an increase in Greenlaw's sentence.  Pp. 5–17.

   (a) In both civil and criminal cases, in the first instance and on appeal, courts follow the principle of party presentation, *i.e.*, the parties frame the issues for decision and the courts generally serve as neutral arbiters of matters the parties present.  To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights.  See *Castro* v. *United States*, 540 U. S. 375, 381–383.

The cross-appeal rule, pivotal in this case, is both informed by, and illustrative of, the party presentation principle. Under that rule, it takes a cross-appeal to justify a remedy in favor of an appellee. See *McDonough* v. *Dannery*, 3 Dall. 188. This Court has called the rule "inveterate and certain," *Morley Constr. Co.* v. *Maryland Casualty Co.*, 300 U. S. 185, 191, and has in no case ordered an exception to it, *El Paso Natural Gas Co.* v. *Neztsosie*, 526 U. S. 473, 480. No exception is warranted here. Congress has specified that when a United States Attorney files a notice of appeal with respect to a criminal sentence, "[t]he Government may not further prosecute [the] appeal without the personal approval of the Attorney General, the Solicitor General, or a deputy solicitor general designated by the Solicitor General." 18 U. S. C. §3742(b). This provision gives the top representatives of the United States in litigation the prerogative to seek or forgo appellate correction of sentencing errors, however plain they may be. Pp. 5–8.

(b) The Eighth Circuit held that the plain-error rule, Fed. Rule Crim. Proc. 52(b), authorized it to order the sentence enhancement *sua sponte*. Nothing in the text or history of Rule 52(b), or in this Court's decisions, suggests that the plain-error rule was meant to override the cross-appeal requirement. In every case in which correction of a plain error would result in modifying a judgment to the advantage of a party who did not seek this Court's review, the Court has invoked the cross-appeal rule to bar the correction. See, *e.g.*, *Chittenden* v. *Brewster*, 2 Wall. 191; *Strunk* v. *United States*, 412 U. S. 434. Even if it would be proper for an appeals court to initiate plain-error review in some cases, sentencing errors that the Government has refrained from pursuing would not fit the bill. In §3742(b), Congress assigned to leading Department of Justice officers responsibility for determining when Government pursuit of a sentencing appeal is in order. Rule 52(b) does not invite appellate court interference with the assessment of those officers. Pp. 8–10.

(c) *Amicus curiae*, invited by the Court to brief and argue the case in support of the Court of Appeals' judgment, links argument based on Rule 52(b) to similar argument based on 28 U. S. C. §2106. For substantially the same reasons that Rule 52(b) does not override the cross-appeal rule, §2106 does not do so either. P. 10.

(d) *Amicus* also argues that 18 U. S. C. §3742, which governs appellate review of criminal sentences, overrides the cross-appeal rule for sentences "imposed in violation of law," §3742(e). *Amicus'* construction of §3742 is novel and complex, but ultimately unpersuasive. At the time §3742 was enacted, the cross-appeal rule was a solidly grounded rule of appellate practice. Congress had crafted explicit exceptions to the cross-appeal rule in earlier statutes governing sen-

tencing appeals, *i.e.*, the Organized Crime Control Act of 1970 and the Controlled Substances Act of 1970. When Congress repealed those exceptions and enacted §3742, it did not similarly express in the text of §3742 any exception to the cross-appeal rule. This drafting history suggests that Congress was aware of the cross-appeal rule and framed §3742 expecting that the new provision would operate in harmony with it. Pp. 10–13.

(e) In increasing Greenlaw's sentence *sua sponte*, the Eighth Circuit did not advert to the procedural rules setting firm deadlines for launching appeals and cross-appeals. See Fed. Rules App. Proc. 3(a)(1), 4(b)(1)(B)(ii), 4(b)(4), 26(b). The strict time limits on notices of appeal and cross-appeal serve, as the cross-appeal rule does, the interests of the parties and the legal system in fair warning and finality. The time limits would be undermined if an appeals court could modify a judgment in favor of a party who filed no notice of appeal. In a criminal prosecution, moreover, the defendant would appeal at his peril, with nothing to alert him that, on his own appeal, his sentence would be increased until the appeals court so decreed. Pp. 13–15.

(f) Nothing in this opinion requires courts to modify their current practice in "sentencing package cases" involving multicount indictments and a successful attack on some but not all of the counts of conviction. The appeals court, in such cases, may vacate the entire sentence on all counts so that the trial court can reconfigure the sentencing plan. On remand, trial courts have imposed a sentence on the remaining counts longer than the sentence originally imposed on those particular counts, but yielding an aggregate sentence no longer than the aggregate sentence initially imposed. This practice is not at odds with the cross-appeal rule, which stops appellate judges from adding years to a defendant's sentence on their own initiative. In any event, this is not a "sentencing package" case. Greenlaw was unsuccessful on all his appellate issues. The Eighth Circuit, therefore, had no occasion to vacate his sentence and no warrant, in the absence of a cross-appeal, to order the addition of 15 years to his sentence. Pp. 15–16.

481 F. 3d 601, vacated and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, SOUTER, and THOMAS, JJ., joined. BREYER, J., filed an opinion concurring in the judgment. ALITO, J., filed a dissenting opinion, in which STEVENS, J., joined, and in which BREYER, J., joined as to Parts I, II, and III.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–330

MICHAEL GREENLAW, AKA MIKEY, PETITIONER *v.*
UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[June 23, 2008]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the role of courts in our adversarial system. The specific question presented: May a United States Court of Appeals, acting on its own initiative, order an increase in a defendant's sentence? Petitioner Michael J. Greenlaw was convicted of various offenses relating to drugs and firearms, and was sentenced to imprisonment for 442 months. He appealed urging, *inter alia*, that his sentence was unreasonably long. After rejecting all of Greenlaw's arguments, the Court of Appeals determined, without Government invitation, that the applicable law plainly required a prison sentence 15 years longer than the term the trial court had imposed. Accordingly, the appeals court instructed the trial court to increase Greenlaw's sentence to 622 months. We hold that, absent a Government appeal or cross-appeal, the sentence Greenlaw received should not have been increased. We therefore vacate the Court of Appeals' judgment.

I

Greenlaw was a member of a gang that, for years, controlled the sale of crack cocaine in a southside Minneapolis

neighborhood. See *United States* v. *Carter*, 481 F. 3d 601, 604 (CA8 2007) (case below). To protect their drug stash and to prevent rival dealers from moving into their territory, gang members carried and concealed numerous weapons. See *id.*, at 605. For his part in the operation, Greenlaw was charged, in the United States District Court for the District of Minnesota, with eight offenses; after trial, he was found guilty on seven of the charges. App. to Pet. for Cert. 16a–17a.

Among Greenlaw's convictions were two for violating 18 U. S. C. §924(c)(1)(A), which prohibits carrying a firearm during and in relation to a crime of violence or a drug trafficking crime: His first §924(c) conviction was for carrying a firearm in connection with a crime committed in 1998; his second, for both carrying and discharging a firearm in connection with a crime committed in 1999. App. to Pet. for Cert. 17a. A first conviction for violating §924(c) carries a mandatory minimum term of 5 years, if the firearm is simply carried. §924(c)(1)(A)(i). If the firearm is also discharged, the mandatory minimum increases to 10 years. §924(c)(1)(A)(iii). For "a second or subsequent conviction," however, whether the weapon is only carried or discharged as well, the mandatory minimum jumps to 25 years. §924(c)(1)(C)(i). Any sentence for violating §924(c), moreover, must run consecutively to "any other term of imprisonment," including any other conviction under §924(c). §924(c)(1)(D)(ii).

At sentencing, the District Court made an error. Over the Government's objection, the court held that a §924(c) conviction does not count as "second or subsequent" when it is "charged in the same indictment" as the defendant's first §924(c) conviction. App. 59, 61–62. The error was plain because this Court had held, in *Deal* v. *United States*, 508 U. S. 129 (1993), that when a defendant is charged in the same indictment with more than one offense qualifying for punishment under §924(c), all convic-

tions after the first rank as "second or subsequent," see *id.*, at 132–137.

As determined by the District Court, Greenlaw's sentence included 262 months (without separately counting sentences that ran concurrently) for all his convictions other than the two under §924(c). For the first §924(c) offense, the court imposed a 5-year sentence in accord with §924(c)(1)(A)(i). As to the second §924(c) conviction, the District Court rejected the Government's request for the 25-year minimum prescribed in §924(c)(1)(C) for "second or subsequent" offenses; instead, it imposed the 10-year term prescribed in §924(c)(1)(A)(iii) for first-time offenses.[1] The total sentence thus calculated came to 442 months.

Greenlaw appealed to the United States Court of Appeals for the Eighth Circuit, urging, *inter alia*, that the appropriate total sentence for all his crimes was 15 years. See 481 F. 3d, at 607. The Court of Appeals found no merit in any of Greenlaw's arguments. *Id.*, at 606–607. Although the Government did not appeal or cross-appeal, *id.*, at 608, it did note, on brief and at oral argument, the District Court's error: Greenlaw's sentence should have been 15 years longer than the 442 months imposed by the District Court, the Government observed, because his second §924(c) conviction called for a 25-year (not a 10-year) mandatory minimum consecutive sentence.

The Government made the observation that the sentence was 15 years too short only to counter Greenlaw's argument that it was unreasonably long. See App. 84–86; Recording of Oral Arg. in *United States* v. *Carter*, No. 05–3391, (CA8, Sept. 26, 2006), at 16:53–19:04, available at http://www.ca8.uscourts.gov/oralargs/oaFrame.html (as visited June 13, 2008). Having refrained from seeking

――――――

[1] The court added 10 years rather than 5 based on the jury's finding that the firearm Greenlaw carried in connection with the second §924(c) offense had been discharged. See App. 44–45, 59–60.

correction of the District Court's error by pursuing its own appeal, the Government simply urged that Greenlaw's sentence should be affirmed.

The Court of Appeals acknowledged that the Government, while objecting at sentencing to the trial court's erroneous reading of §924(c)(1)(C), had elected to seek no appellate court alteration of Greenlaw's sentence. 481 F. 3d, at 608. Relying on the "plain-error rule" stated in Federal Rule of Criminal Procedure 52(b), however, the appeals court held that it had discretion to raise and correct the District Court's error on its own initiative. 481 F. 3d, at 608–609. The Court of Appeals therefore vacated the sentence and instructed the District Court "to impose the [statutorily mandated] consecutive minimum sentence of 25 years." *Id.*, at 611.

Petitioning for rehearing and rehearing en banc, Greenlaw asked the Eighth Circuit to adopt the position advanced by the Seventh Circuit in *United States* v. *Rivera*, 411 F. 3d 864 (2005). App. 95. "By deciding not to take a cross-appeal," the Seventh Circuit stated, "the United States has ensured that [the defendant's] sentence cannot be increased." 411 F. 3d, at 867. The Eighth Circuit denied rehearing without an opinion. App. to Pet. for Cert. 28a. On remand, as instructed by the Court of Appeals, the District Court increased Greenlaw's sentence by 15 years, yielding a total prison term of 622 months. App. 103–104, 109.

Greenlaw petitioned for certiorari noting a division among the Circuits on this question: When a defendant unsuccessfully challenges his sentence as too high, may a court of appeals, on its own initiative, increase the sentence absent a cross-appeal by the Government? In response, the Government "agree[d] with [Greenlaw] that the court of appeals erred in *sua sponte* remanding the case with directions to enhance petitioner's sentence." Brief in Opposition 12. We granted review and invited Jay

T. Jorgensen to brief and argue this case, as *amicus curiae*, in support of the Court of Appeals' judgment. 552 U. S. \_\_\_ (2008). Mr. Jorgensen accepted the appointment and has well fulfilled his assigned responsibility.

## II

In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights. See *Castro* v. *United States*, 540 U. S. 375, 381–383 (2003).[2] But as a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Id.*, at 386 (SCALIA, J., concurring in part and concurring in judgment).[3] As cogently explained:

> "[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. Counsel almost always know a great deal more about their cases than we do, and this must be particularly true of counsel for the

---

[2] Because this case does not present the issue, we take no position on whether correction of an error prejudicial to a nonappealing criminal defendant might be justified as a measure to obviate the need for a collateral attack. See *post*, at 6–7.

[3] Cf. Kaplan, Civil Procedure—Reflections on the Comparison of Systems, 9 Buffalo L. Rev. 409, 431–432 (1960) (U. S. system "exploits the free-wheeling energies of counsel and places them in adversary confrontation before a detached judge"; "German system puts its trust in a judge of paternalistic bent acting in cooperation with counsel of somewhat muted adversary zeal").

United States, the richest, most powerful, and best represented litigant to appear before us." *United States* v. *Samuels*, 808 F. 2d 1298, 1301 (CA8 1987) (R. Arnold, J., concurring in denial of reh'g en banc).

The cross-appeal rule, pivotal in this case, is both informed by, and illustrative of, the party presentation principle. Under that unwritten but longstanding rule, an appellate court may not alter a judgment to benefit a nonappealing party. This Court, from its earliest years, has recognized that it takes a cross-appeal to justify a remedy in favor of an appellee. See *McDonough* v. *Dannery*, 3 Dall. 188, 198 (1796). We have called the rule "inveterate and certain." *Morley Constr. Co.* v. *Maryland Casualty Co.*, 300 U. S. 185, 191 (1937).

Courts of Appeals have disagreed, however, on the proper characterization of the cross-appeal rule: Is it "jurisdictional," and therefore exceptionless, or a "rule of practice," and thus potentially subject to judicially created exceptions? Compare, *e.g.*, *Johnson* v. *Teamsters Local 559*, 102 F. 3d 21, 28–29 (CA1 1996) (cross-appeal rule "is mandatory and jurisdictional"), with, *e.g.*, *American Roll-On Roll-Off Carrier, LLC* v. *P & O Ports Baltimore, Inc.*, 479 F. 3d 288, 295–296 (CA4 2007) ("cross-appeal requirement [is] one of practice, [not] a strict jurisdictional requirement"). Our own opinions contain statements supporting both characterizations. Compare, *e.g.*, *Morley Constr. Co.*, 300 U. S., at 187 (cross-appeal rule defines "[t]he *power* of an appellate court to modify a decree" (emphasis added)), with, *e.g.*, *Langnes* v. *Green*, 282 U. S. 531, 538 (1931) (cross-appeal requirement is "a rule of practice which generally has been followed").

In *El Paso Natural Gas Co.* v. *Neztsosie*, 526 U. S. 473, 480 (1999), we declined to decide "the theoretical status" of the cross-appeal rule. It sufficed to point out that the rule was "firmly entrenched" and served to advance "institu-

tional interests in fair notice and repose." *Ibid.* "Indeed," we noted, "in more than two centuries of repeatedly endorsing the cross-appeal requirement, not a single one of our holdings has ever recognized an exception to the rule." *Ibid.* Following the approach taken in *Neztsosie*, we again need not type the rule "jurisdictional" in order to decide this case.

Congress has eased our decision by specifying the instances in which the Government may seek appellate review of a sentence, and then adding this clear instruction: Even when a United States Attorney files a notice of appeal with respect to a sentence qualifying for review, "[t]he Government may not further prosecute [the] appeal without the personal approval of the Attorney General, the Solicitor General, or a deputy solicitor general designated by the Solicitor General." 18 U. S. C. §3742(b). Congress thus entrusted to named high-ranking officials within the Department of Justice responsibility for determining whether the Government, on behalf of the public, should seek a sentence higher than the one imposed. It would severely undermine Congress' instruction were appellate judges to "sally forth" on their own motion, cf. *supra*, at 5, to take up errors adverse to the Government when the designated Department of Justice officials have not authorized an appeal from the sentence the trial court imposed.[4]

------

[4] The dissent reads §3742(b) not as a restraint on *sua sponte* error correction by appellate courts, but simply as apportioning "authority *within* an executive department." *Post*, at 11; see *post*, at 13 ("[P]erhaps Congress wanted to . . . giv[e] high-level officials the authority to nix meritless or marginal [sentencing appeals]."). A statute is hardly needed to establish the authority of the Attorney General and Solicitor General over local U. S. Attorneys on matters relating to the prosecution of criminal cases, including appeals of sentences. It seems unlikely, moreover, that Congress, having lodged discretion in top-ranking Department of Justice officers, meant that discretion to be shared with more than 200 appellate judges.

This Court has recognized that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." *United States* v. *Nixon*, 418 U. S. 683, 693 (1974). We need not decide whether comparable authority and discretion are lodged in the Executive Branch with respect to the pursuit of issues on appeal. We need only recognize that Congress, in §3742(b), has accorded to the top representatives of the United States in litigation the prerogative to seek or forgo appellate correction of sentencing errors, however plain they may be. That measure should garner the Judiciary's full respect.

## III

### A

In ordering the District Court to add 15 years to Greenlaw's sentence, despite the absence of a cross-appeal by the Government, the Court of Appeals identified Federal Rule of Criminal Procedure 52(b) as the source of its authority. See 481 F. 3d, at 608–609, and n. 5. Rule 52(b) reads: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Nothing in the text or history of Rule 52(b) suggests that the rulemakers, in codifying the plain-error doctrine, meant to override the cross-appeal requirement. See Advisory Committee's Notes on Fed. Rule Crim. Proc. 52, 18 U. S. C. App., p. 1664 (describing Rule 52(b) as "a restatement of existing law").

Nor do our opinions support a plain-error exception to the cross-appeal rule. This Court has indeed noticed, and ordered correction of, plain errors not raised by defendants, but we have done so only to benefit a defendant who had himself petitioned the Court for review on other grounds. See, *e.g.*, *Silber* v. *United States*, 370 U. S. 717 (1962) *(per curiam)*. In no case have we applied plain-error doctrine to the detriment of a petitioning party. Rather, in every case in which correction of a plain error

would result in modification of a judgment to the advantage of a party who did not seek this Court's review, we have invoked the cross-appeal rule to bar the correction.

In *Chittenden* v. *Brewster*, 2 Wall. 191 (1865), for example, the appellants asserted that an award entered in their favor was too small. A prior decision of this Court, however, made it plain that they were entitled to no award at all. See *id.*, at 195–196 (citing *Jones* v. *Green*, 1 Wall. 330 (1864)). But because the appellee had not filed a cross-appeal, the Court left the award undisturbed. See 2 Wall., at 196. *Strunk* v. *United States*, 412 U. S. 434 (1973), decided over a century later, is similarly illustrative. There, the Court of Appeals had determined that the defendant was denied his right to a speedy trial, but held that the proper remedy was reduction of his sentence as compensation for the delay, not dismissal of the charges against him. As petitioner in this Court, the defendant sought review of the remedial order. See *id.*, at 435. The Court suggested that there may have been no speedy trial violation, as "it seem[ed] clear that [the defendant] was responsible for a large part of the . . . delay." *Id.*, at 436. But because the Government had not raised the issue by cross-petition, we considered the case on the premise that the defendant had been deprived of his Sixth Amendment right, *id.*, at 437, and ruled that dismissal of the indictment was the proper remedy, *id.*, at 439–440.

Even if there might be circumstances in which it would be proper for an appellate court to initiate plain-error review, sentencing errors that the Government refrained from pursuing would not fit the bill. Heightening the generally applicable party presentation principle, Congress has provided a dispositive direction regarding sentencing errors that aggrieve the Government. In §3742(b), as earlier explained, see *supra*, at 7, Congress designated leading Department of Justice officers as the decisionmakers responsible for determining when Government pursuit

of a sentencing appeal is in order. Those high officers, Congress recognized, are best equipped to determine where the Government's interest lies. Rule 52(b) does not invite appellate court interference with their assessment.

B

*Amicus* supporting the Eighth Circuit's judgment links the argument based on Rule 52(b) to a similar argument based on 28 U. S. C. §2106. See Brief for *Amicus Curiae* by Invitation of the Court 40–43 (hereinafter Jorgensen Brief). Section 2106 states that federal appellate courts "may affirm, modify, vacate, set aside or reverse any judgment . . . lawfully brought before it for review." For substantially the same reasons that Rule 52(b) does not override the cross-appeal requirement, §2106 does not do so either. Section 2106 is not limited to plain errors, much less to sentencing errors in criminal cases—it applies to all cases, civil and criminal, and to all errors. Were the construction *amicus* offers correct, §2106 would displace the cross-appeal rule cross-the-board. The authority described in §2106, we have observed, "must be exercised consistent with the requirements of the Federal Rules of Civil Procedure as interpreted by this Court." *Unitherm Food Systems, Inc.* v. *Swift-Eckrich, Inc.*, 546 U. S. 394, 402–403, n. 4 (2006). No different conclusion is warranted with respect to the "inveterate and certain" cross-appeal rule. *Morley Constr. Co.*, 300 U. S., at 191.

C

In defending the Court of Appeals judgment, *amicus* places heavy weight on an argument pinned not to Rule 52(b) or 28 U. S. C. §2106, but to the text of 18 U. S. C. §3742, the Criminal Code provision governing appellate review of criminal sentences. As *amicus* reads §3742, once either party appeals a sentence, the Court of Appeals must remand "any illegal sentence regardless of

whether the remand hurts or helps the appealing party." Jorgensen Brief 9. Congress so directed, *amicus* argues, by instructing that, upon review of the record, a court of appeals "*shall determine* . . . whether the sentence was imposed in violation of law," §3742(e) (emphasis added), and "*shall remand*" if it so determines, §3742(f)(1) (2000 ed., Supp. V) (emphasis added). See Jorgensen Brief 10–11, and n. 3.

*Amicus* makes a further text-based observation. He notes that §3742(f)(2)—the provision covering sentences "outside the applicable [G]uideline range"—calls for a remand only where a departure from the Federal Sentencing Guidelines harms the appellant. In contrast, *amicus* emphasizes, §3742(f)(1)—the provision controlling sentences imposed "in violation of law" and Guideline application errors—contains no such appellant-linked limitation. The inference *amicus* draws from this distinction is that Congress intended to override the cross-appeal rule for sentences controlled by §3742(f)(1), *i.e.*, those imposed "in violation of law" (or incorrectly applying the Guidelines), but not for Guideline departure errors, the category covered by §3742(f)(2). See *id.*, at 14–15.

This novel construction of §3742, presented for the first time in the brief *amicus* filed in this Court,[5] is clever and complex, but ultimately unpersuasive. Congress enacted §3742 in 1984. See Sentencing Reform Act, §213(a), 98 Stat. 2011. At that time, the cross-appeal requirement was a solidly grounded rule of appellate practice. See *supra*, at 6. The inference properly drawn, we think, is that Congress was aware of the cross-appeal rule, and framed §3742 expecting that the new provision would

—————

[5] An appellee or respondent may defend the judgment below on a ground not earlier aired. See *United States* v. *American Railway Express Co.*, 265 U. S. 425, 435 (1924) ("[T]he appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record[.]").

operate in harmony with the "inveterate and certain" bar
to enlarging judgments in favor of an appellee who filed no
cross-appeal. Cf. *Astoria Fed. Sav. & Loan Assn.* v.
*Solimino*, 501 U. S. 104, 108 (1991) ("Congress is under-
stood to legislate against a background of common-law
adjudicatory principles.").

Congress indicated awareness of the cross-appeal rule in
an earlier measure, the Organized Crime Control Act of
1970 (OCCA), Pub. L. 91–452, 84 Stat. 922, which pro-
vided for review of sentences of "dangerous special offend-
ers." See §1001(a), *id.*, at 948–951. For that Act, Con-
gress crafted an explicit exception to the cross-appeal rule.
It ordered that an appeal of a sentence taken by the Gov-
ernment "shall be deemed the taking of [an appeal] by the
defendant." *Id.*, at 950. But the "deeming" ran in only one
direction: "[A] sentence may be made more severe" OCCA
provided, "only on review . . . taken by the United States."
*Id.*, at 950–951.[6] When Congress repealed this provision
and, in §3742, broadly provided for appellate review of
sentences, it did not similarly express in the new text any
exception to the cross-appeal rule. In short, Congress
formulated a precise exception to the cross-appeal rule
when that was its intention. Notably, the exception Con-
gress legislated did not expose a defendant to a higher
sentence in response to his own appeal. Congress spoke
plainly in the 1970 legislation, leaving nothing for a court
to infer. We therefore see no reason to read the current
statute in the inventive manner *amicus* proposes, infer-
ring so much from so little.

*Amicus*' reading of §3742, moreover, would yield some
strange results. We note two, in particular. Under his

---

[6] The Controlled Substances Act of 1970, §409(h), 84 Stat. 1268–1269,
contained matching instructions applicable to "dangerous special drug
offender[s]." The prescriptions in both Acts were replaced by §3742.
See Sentencing Reform Act of 1984, §§212(2), 213(a), 219, 98 Stat. 1987,
2011, 2027.

construction, §3742 would give with one hand what it takes away with the other: §3742(b) entrusts to certain Government officials the decision whether to appeal an illegally low sentence, see *supra*, at 7; but according to *amicus*, §§3742(e) and (f) would instruct appellate courts to correct an error of that order on their own initiative, thereby trumping the officials' decision. We resist attributing to Congress an intention to render a statute so internally inconsistent. Cf. *Western Air Lines, Inc.* v. *Board of Equalization of S. D.*, 480 U. S. 123, 133 (1987) ("The illogical results of applying [a proffered] interpretation . . . argue strongly against the conclusion that Congress intended th[o]se results[.]"). Further, the construction proposed by *amicus* would draw a puzzling distinction between incorrect applications of the Sentencing Guidelines, controlled by §3742(f)(1), and erroneous departures from the Guidelines, covered by §3742(f)(2). The latter would be subject to the cross-appeal rule, the former would not. We do not see why Congress would want to differentiate Guidelines decisions this way.[7]

D

In increasing Greenlaw's sentence by 15 years on its own initiative, the Eighth Circuit did not advert to the procedural rules setting deadlines for launching appeals and cross-appeals. Unyielding in character, these rules

_____

[7] In rejecting the interpretation of §§3742(e) and (f) proffered by *amicus*, we take no position on the extent to which the remedial opinion in *United States* v. *Booker*, 543 U. S. 220 (2005), excised those provisions. Compare *Rita* v. *United States*, 551 U. S. \_\_\_, \_\_\_ (2007) (slip op., at 2) (STEVENS, J., concurring) (*Booker* excised only the portions of §3742(e) that required *de novo* review by courts of appeals), with 551 U. S., at \_\_\_ (slip op., at 17) (SCALIA, J., concurring in part and concurring in judgment) (*Booker* excised *all* of §§3742(e) and (f)). See also *Kimbrough* v. *United States*, 552 U. S. \_\_\_, \_\_\_ (2007) (slip op., at 3) (THOMAS, J., dissenting) (the *Booker* remedial opinion, whatever it held, cannot be followed).

may be seen as auxiliary to the cross-appeal rule and the party presentation principle served by that rule. Federal Rule of Appellate Procedure 3(a)(1) provides that "[a]n appeal permitted by law . . . may be taken *only by filing a notice of appeal* . . . within the [prescribed] time." (Emphasis added.) Complementing Rule 3(a)(1), Rule 4(b)(1)(B)(ii) instructs that, when the Government has the right to cross-appeal in a criminal case, its notice "*must be filed* . . . within 30 days after . . . the filing of a notice of appeal by any defendant." (Emphasis added.) The filing time for a notice of appeal or cross-appeal, Rule 4(b)(4) states, may be extended "for a period not to exceed 30 days." Rule 26(b) bars any extension beyond that time.

The firm deadlines set by the Appellate Rules advance the interests of the parties and the legal system in fair notice and finality. Thus a defendant who appeals but faces no cross-appeal can proceed anticipating that the appellate court will not enlarge his sentence. And if the Government files a cross-appeal, the defendant will have fair warning, well in advance of briefing and argument, that pursuit of his appeal exposes him to the risk of a higher sentence. Given early warning, he can tailor his arguments to take account of that risk. Or he can seek the Government's agreement to voluntary dismissal of the competing appeals, see Fed. Rule App. Proc. 42(b), before positions become hardened during the hours invested in preparing the case for appellate court consideration.

The strict time limits on notices of appeal and cross-appeal would be undermined, in both civil and criminal cases, if an appeals court could modify a judgment in favor of a party who filed no notice of appeal. In a criminal prosecution, moreover, the defendant would appeal at his peril, with nothing to alert him that, on his own appeal, his sentence would be increased until the appeals court so decreed. In this very case, Greenlaw might have made different strategic decisions had he known soon after filing

his notice of appeal that he risked a 15-year increase in an already lengthy sentence.

### E

We note that nothing we have said in this opinion requires courts to modify their current practice in so-called "sentencing package cases." Those cases typically involve multicount indictments and a successful attack by a defendant on some but not all of the counts of conviction. The appeals court, in such instances, may vacate the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to assure that it remains adequate to satisfy the sentencing factors in 18 U. S. C. §3553(a) (2000 ed. and Supp. V). In remanded cases, the Government relates, trial courts have imposed a sentence on the remaining counts longer than the sentence originally imposed on those particular counts, but yielding an aggregate sentence no longer than the aggregate sentence initially imposed. See Brief for United States 23, n. 11 (citing, *inter alia*, *United States* v. *Pimienta-Redondo*, 874 F. 2d 9 (CA1 1989) (en banc)). Thus the defendant ultimately may gain nothing from his limited success on appeal, but he will also lose nothing, as he will serve no more time than the trial court originally ordered.

The practice the Government describes is not at odds with the cross-appeal rule, which stops appellate judges from adding years to a defendant's sentence on their own initiative. It simply ensures that the sentence "'will suit not merely the offense but the individual defendant.'" *Pimienta-Redondo*, 874 F. 2d, at 14 (quoting *Wasman* v. *United States*, 468 U. S. 559, 564 (1984)). And the assessment will be made by the sentencing judge exercising

discretion, not by an appellate panel ruling on an issue of law no party tendered to the court.[8]

This is not a "sentencing package" case. Greenlaw was unsuccessful on all his appellate issues. There was no occasion for the Court of Appeals to vacate his sentence and no warrant, in the absence of a cross-appeal, to order the addition of 15 years to his sentence.[9]

––––––––––

[8] The dissent suggests that our reading of the cross-appeal rule is anomalous because it could bar a court of appeals from correcting an error that would increase a defendant's sentence, but after a "successful" appeal the district court itself could rely on that same error to increase the sentence. See *post*, at 10–11, and n. 2. The cross-appeal rule, we of course agree, does not confine the trial court. But default and forfeiture doctrines do. It would therefore be hard to imagine a case in which a district court, after a court of appeals vacated a criminal sentence, could properly increase the sentence based on an error the appeals court left uncorrected because of the cross-appeal rule. What of cases remanded post-*Booker* on defendants' appeals, the dissent asks? *Post*, at 10–11, n. 2. In those cases, defendants invited and received precisely the relief they sought, and the Sixth Amendment required. Neither the cross-appeal rule nor default and forfeiture had any role to play.

[9] For all its spirited argument, the dissent recognizes the narrow gap between its core position and the Court's. The cross-appeal rule, rooted in the principle of party presentation, the dissent concedes, should hold sway in the "vast majority of cases." *Post*, at 4. Does this case qualify as the "rare" exception to the "strong rule of practice" the dissent advocates? See *ibid.* Greenlaw was sentenced to imprisonment for 442 months. The Government might have chosen to insist on 180 months more, but it elected not to do so. Was the error so "grossly prejudicial," *post*, at 7, 9, so harmful to our system of justice, see *post*, at 7–8, as to warrant *sua sponte* correction? By what standard is the Court of Appeals to make such an assessment? Without venturing to answer these questions, see *post*, at 13, n. 3, the dissent would simply "entrust the decision to initiate error correction to the sound discretion of the courts of appeals," *post*, at 1. The "strong rule" thus may be broken whenever the particular three judges composing the appellate panel see the sentence as a "wron[g] to right." See *supra*, at 5 (internal quotation marks omitted). The better answer, consistent with our jurisprudence, as reinforced by Congress, entrusts "the decision [whether] to initiate error correction" in this matter to top counsel for the United States. See *supra*, at 7.

Opinion of the Court

\*      \*      \*

For the reasons stated, the judgment of the United States Court of Appeals for the Eighth Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 07–330

———————

## MICHAEL GREENLAW, AKA MIKEY, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[June 23, 2008]

JUSTICE BREYER, concurring in the judgment.

I agree with JUSTICE ALITO that the cross-appeal requirement is simply a rule of practice for appellate courts, rather than a limitation on their power, and I therefore join Parts I–III of his opinion. Moreover, as a general matter, I would leave application of the rule to the courts of appeals, with our power to review their discretion "seldom to be called into action." *Universal Camera Corp.* v. *NLRB*, 340 U. S. 474, 490 (1951). But since this case is now before us, I would consider whether the Court of Appeals here acted properly. Primarily for the reasons stated by the majority in footnote 9 of its opinion, I believe that the court abused its discretion in *sua sponte* increasing petitioner's sentence. Our precedent precludes the creation of an exception to the cross-appeal requirement based solely on the obviousness of the lower court's error. See, *e.g.*, *Chittenden* v. *Brewster*, 2 Wall. 191, 195–196 (1865). And I cannot see how the interests of justice are significantly disserved by permitting petitioner's release from prison at roughly age 62, after almost 37 years behind bars, as opposed to age 77.

# SUPREME COURT OF THE UNITED STATES

_____

No. 07–330

_____

## MICHAEL GREENLAW, AKA MIKEY, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[June 23, 2008]

JUSTICE ALITO, with whom JUSTICE STEVENS joins, and with whom JUSTICE BREYER joins as to Parts I, II, and III, dissenting.

I respectfully dissent because I view the cross-appeal requirement as a rule of appellate practice. It is akin to the rule that courts invoke when they decline to consider arguments that the parties have not raised. Both rules rest on premises about the efficient use of judicial resources and the proper role of the tribunal in an adversary system. Both are sound and should generally be followed. But just as the courts have made them, the courts may make exceptions to them, and I do not understand why a reviewing court should enjoy less discretion to correct an error *sua sponte* than it enjoys to raise and address an argument *sua sponte*. Absent congressional direction to the contrary, and subject to our limited oversight as a supervisory court, we should entrust the decision to initiate error correction to the sound discretion of the courts of appeals.

I

Before laying out my view in more detail, I must first address the question whether federal courts have subject-matter jurisdiction to enlarge an appellee's judgment in the absence of a cross-appeal. Because the Court would

not recognize any exceptions to the cross-appeal require-
ment when the defendant appeals his sentence, it does not
decide that question.  See *ante*, at 7.  I must confront it,
though I do not regard it as a substantial question.  The
cross-appeal requirement seems to me a prime example of
a "'rule of practice,' subject to exceptions, not an unquali-
fied limit on the power of appellate courts." *El Paso Natu-
ral Gas Co.* v. *Neztsosie*, 526 U. S. 473, 480 (1999).  While
a court should generally enforce the cross-appeal require-
ment, a departure from it would not divest the court of
jurisdiction.

This Court has never addressed whether an appellate
court's jurisdiction to enlarge a judgment in favor of an
appellee is contingent on a duly filed cross-appeal.  The
majority's contention that "[o]ur own opinions contain
statements supporting" the "'jurisdictional'" characteriza-
tion of the requirement, *ante,* at 6, relies on a misreading
of that precedent.  The Court may have previously charac-
terized the cross-appeal requirement as limiting "'[t]he
*power* of an appellate court to modify a decree,'" *ibid.*
(quoting *Morley Constr. Co.* v. *Maryland Casualty Co.*, 300
U. S. 185, 187 (1937)), but it does not follow that jurisdic-
tion is conditioned on a properly filed cross-appeal.  A
court may lack the power to do something for reasons
other than want of jurisdiction, and a rule can be inflexi-
ble without being jurisdictional.  See *Eberhart* v. *United
States*, 546 U. S. 12, 19 (2005) *(per curiam)*.

The jurisdiction of the courts of appeals is fixed by
Congress.  See *Bowles* v. *Russell*, 551 U. S. ___, ___ (2007)
(slip op., at 6); *Ankenbrandt* v. *Richards*, 504 U. S. 689,
698 (1992) ("'[T]he judicial power of the United States . . .
is (except in enumerated instances, applicable exclusively
to this Court) dependent for its distribution and organiza-
tion, and for the modes of its exercise, entirely upon the
action of Congress'" (quoting *Cary* v. *Curtis*, 3 How. 236,
245 (1845))).  If Congress wants to withhold from the

courts of appeals the power to decide questions that expand the rights of nonappealing parties, it may do so. See U. S. Const., Art. III, §1 (authorizing Congress to establish the lower courts and, by corollary, to fix their jurisdiction); *Kontrick* v. *Ryan*, 540 U. S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction"). The jurisdictional question thus reduces to whether Congress intended to make a cross-appeal a condition precedent to the appellate court's jurisdiction to enlarge a judgment in favor of a nonappealing party.

As always with such questions, the text of the relevant statute provides the best evidence of congressional intent. The relevant statute in this case is 18 U. S. C. §3742 (2000 ed. and Supp. V). Section 3742(a) authorizes a criminal defendant to "file a notice of appeal" to review a sentence that was, among other possibilities, "imposed in violation of law." *E.g.,* §3742(a)(1). Section 3742(b) provides parallel authority for the Government to "file a notice of appeal" to review unlawful sentences. *E.g.,* §3742(b)(1). The statute conditions the Government's authority to further prosecute its appeal on "the personal approval of the Attorney General, the Solicitor General, or a deputy solicitor general designated by the Solicitor General." §3742(b).

Nothing in this language remotely suggests that a court of appeals lacks subject-matter jurisdiction to increase a defendant's sentence in the absence of a cross-appeal by the Government. In fact, the statute does not even mention cross-appeals. It separately authorizes either party to "file a notice of appeal," but it never suggests that the reviewing court's power is limited to correcting errors for the benefit of the appealing party. If anything, it suggests the opposite. Without qualifying the appellate court's power in any way, §3742(e) instructs the court to determine, among other things, whether the sentence was "imposed in violation of law." §3742(e)(1). And while §3742(f)(2) limits the action that a court of appeals can

take depending on which party filed the appeal, compare §3742(f)(2)(A) (sentences set aside as "too high" if defendant filed) with §3742(f)(2)(B) (sentences set aside as "too low" if Government filed), no such limitation appears in §3742(f)(1). That paragraph requires a court of appeals simply to set aside any sentence "imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines."

## II

Since a cross-appeal has no effect on the appellate court's subject-matter jurisdiction, the cross-appeal requirement is best characterized as a rule of practice. It is a rule created by the courts to serve interests that are important to the Judiciary. The Court identifies two of these interests: notice to litigants and finality. *Ante,* at 14; see also *Neztsosie, supra*, at 480. One might add that the cross-appeal requirement also serves a third interest: the appellate court's interest in being adequately briefed on the issues that it decides. See Fed. Rule App. Proc. 28.1(c) and Advisory Committee's Notes, 28 U. S. C. App., pp. 615–616. Although these are substantial interests in the abstract, I question how well an inflexible cross-appeal requirement serves them.

*Notice.* With respect to notice, the benefits of an unyielding cross-appeal requirement are insubstantial. When the Government files a notice of cross-appeal, the defendant is alerted to the possibility that his or her sentence may be increased as a result of the appellate decision. But if the cross-appeal rule is, as I would hold, a strong rule of practice that should be followed in all but exceptional instances, the Government's failure to file a notice of cross-appeal would mean in the vast majority of cases that the defendant thereafter ran little risk of an increased sentence. And the rare cases where that possibility arose would generally involve errors so plain that no

conceivable response by the defendant could alter the result. It is not unreasonable to consider an appealing party to be on notice as to such serious errors of law in his favor. And while there may be rare cases in which the existence of such a legal error would come as a complete surprise to the defendant or in which argument from the parties would be of assistance to the court, the solution to such a problem is not to eliminate the courts of appeals' authority to correct egregious errors. Rather, the appropriate response is for the court of appeals to request supplemental briefing or—if it deems that insufficient— simply to refuse to exercise its authority. Cf. *Irizarry* v. *United States*, 553 U. S. ___, ___ (2008) (slip op., at 9). In short, the Court's holding does not increase the substance of the notice that a defendant receives; it merely accelerates that notice by at most a few weeks in a very small number of cases.

The Court contends that "[g]iven early warning, [the defendant] can tailor his arguments to take account of [the risk of a higher sentence] . . . [o]r he can seek the Government's agreement to voluntary dismissal of the competing appeals." *Ante,* at 14 (citing Fed. Rule App. Proc. 42(b)). But the Court does not explain how a notice of cross-appeal, a boilerplate document, helps the defendant "tailor his arguments." Whether the cross-appeal rule is ironclad, as the Court believes, or simply a strong rule of practice, a defendant who wishes to appeal his or her sentence is always free to seek the Government's commitment not to cross-appeal or to terminate a cross-appeal that the Government has already taken. Fed. Rule App. Proc. 42(b).

*Finality.* An inflexible cross-appeal rule also does little to further the interest of the parties and the Judiciary in the finality of decisions. An appellate court's decision to grant a nonappealing party additional relief does not interrupt a long, undisturbed slumber. The error's repose begins no earlier than the deadline for filing a cross-

appeal, and it ends as soon as the reviewing court issues its opinion—and often much sooner. Here, for example, the slumber was broken when the Government identified the error in its brief as appellee. See Brief for United States 5.

*Orderly Briefing.* I do not doubt that adversarial briefing improves the quality of appellate decisionmaking, but it hardly follows that appellate courts should be denied the authority to correct errors that seriously prejudice nonappealing parties. Under my interpretation of the cross-appeal rule, a court of appeals would not be obligated to address errors that are prejudicial to a nonappealing party; a court of appeals would merely have the authority to do so in appropriate cases. If a court of appeals noticed such an error and concluded that it was appropriate to address the issue, the court could, if it wished, order additional briefing. If, on the other hand, the court concluded that the issue was not adequately addressed by the briefs filed by the parties in the ordinary course and that additional briefing would interfere with the efficient administration of the court's work, the court would not be required to decide the issue. Therefore, I do not see how the courts of appeals' interest in orderly briefing is furthered by denying those courts the discretionary authority to address important issues that they find it appropriate to decide.

Indeed, the inflexible cross-appeal rule that the Court adopts may disserve the interest in judicial efficiency in some cases. For example, correcting an error that prejudiced a nonappealing defendant on direct review might obviate the need for a collateral attack. Cf. *Granberry* v. *Greer*, 481 U. S. 129, 134 (1987) (allowing the Court of Appeals to address the merits of an unexhausted habeas corpus petition if "the interests of comity and federalism will be better served by addressing the merits forthwith [than] by requiring a series of additional state and district

court proceedings before reviewing the merits of the petitioner's claim"); *Munaf* v. *Geren*, 553 U. S. \_\_\_, \_\_\_ (2008) (slip op., at 13) (recognizing "occasions . . . when it is appropriate to proceed further and address the merits" of a habeas corpus petition rather than reverse and remand on threshold matters).  Because the reviewing court is in the best position to decide whether a departure from the cross-appeal rule would be efficient, rigid enforcement of that rule is more likely to waste judicial resources than to conserve them.

In sum, the Court exaggerates the interests served by the cross-appeal requirement.  At the same time, it overlooks an important interest that the rule disserves: the interest of the Judiciary and the public in correcting grossly prejudicial errors of law that undermine confidence in our legal system.  We have repeatedly stressed the importance of that interest, see, *e.g., United States* v. *Olano*, 507 U. S. 725, 736–737 (1993); *Press-Enterprise Co.* v. *Superior Court of Cal., Riverside Cty.*, 464 U. S. 501, 507 (1984); *New York Central R. Co.* v. *Johnson*, 279 U. S. 310, 318 (1929), and it has justified departures from our traditional adversary framework in other contexts.  The Court mentions one of those contexts, see *ante,* at 5 (*pro se* litigation), but there are others that deserve mention.

The most well-known is plain-error review.  Federal Rule of Criminal Procedure 52(b) authorizes reviewing courts to correct "[a] plain error that affects substantial rights . . . even though it was not brought to the court's attention."  Although I agree with the Court that this Rule does not independently justify the Eighth Circuit's decision, see *ante,* at 8–9, I believe that the Rule's underlying policy sheds some light on the issue before us.  We have explained that courts may rely on Rule 52(b) to correct only those plain errors that "'seriously affec[t] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, *supra*, at 736 (quoting *United States* v. *Atkinson*,

297 U. S. 157, 160 (1936)). We have thus recognized that preservation of the "fairness, integrity or public reputation of judicial proceedings" may sometimes justify a departure from the traditional adversarial framework of issue presentation.

Perhaps the closest analogue to the cross-appeal requirement is the rule of appellate practice that restrains reviewing courts from addressing arguments that the parties have not made. Courts typically invoke this rule to avoid resolving a case based on an unaired argument, even if the argument could change the outcome. See, *e.g., Santiago* v. *Rumsfeld*, 425 F. 3d 549, 552, n. 1 (CA9 2005); *United States* v. *Cervini*, 379 F. 3d 987, 994, n. 5 (CA10 2004). But courts also recognize that the rule is not inflexible, see, *e.g., Santiago, supra*, at 552, n. 1, and sometimes they depart from it, see, *e.g., United States Nat. Bank of Ore.* v. *Independent Ins. Agents of America, Inc.*, 508 U. S. 439, 448 (1993) ("After giving the parties ample opportunity to address the issue, the Court of Appeals acted without any impropriety in refusing to accept what in effect was a stipulation on a question of law" (citing *Swift & Co.* v. *Hocking Valley R. Co.,* 243 U. S. 281, 289 (1917))); *United States* v. *Moyer*, 282 F. 3d 1311, 1317–1318 (CA10 2002); *Dorris* v. *Absher*, 179 F. 3d 420, 425–426 (CA6 1999).

A reviewing court will generally address an argument *sua sponte* only to correct the most patent and serious errors. See, *e.g., id.,* at 426 (concluding that the error, if overlooked, would result in "a miscarriage of justice"); *Consumers Union of U. S., Inc.* v. *Federal Power Comm'n*, 510 F. 2d 656, 662 (CADC 1974) (balancing "considerations of judicial orderliness and efficiency against the need for the greatest possible accuracy in judicial decisionmaking"). Because the prejudicial effect of the error and the impact of error correction on judicial resources are matters best determined by the reviewing court, the court's deci-

sion to go beyond the arguments made by the parties is committed to its sound discretion. See *United States Nat. Bank of Ore.*, *supra*, at 448 (reviewing an appellate court's decision to address an argument *sua sponte* for abuse of discretion).

This authority provides a good model for our decision in this case. The Court has not persuaded me that the interests at stake when a reviewing court awards a nonappealing party additional relief are qualitatively different from the interests at stake when a reviewing court raises an issue *sua sponte*. Authority on the latter point recognizes that the interest of the public and the Judiciary in correcting grossly prejudicial errors of law may sometimes outweigh other interests normally furthered by fidelity to our adversarial tradition. I would recognize the same possibility here. And just as reviewing courts enjoy discretion to decide for themselves when to raise and decide arguments *sua sponte*, I would grant them substantial latitude to decide when to enlarge an appellee's judgment in the absence of a cross-appeal.[1]

## III

The approach I advocate is not out of step with our precedent. The Court has never decided whether the cross-appeal requirement is "subject to exceptions [or] an unqualified limit on the power of appellate courts." *Neztsosie*, 526 U. S., at 480. That question was reserved in *Neztsosie*, *ibid.*, even as the Court recognized that lower courts had reached different conclusions, see *id.,* at 480,

---

[1] The Court argues that petitioner's original sentence was neither so fundamentally unfair nor so harmful to our system of justice as to warrant *sua sponte* correction by the Court of Appeals. *Ante,* at 16, n. 9. But these considerations, which may well support a conclusion that the Court of Appeals should not have exercised its authority in this case, cf. n. 3, *infra*, surely do not justify the Court's broad rule that *sua sponte* error correction on behalf of the Government is inappropriate in all cases.

n. 2.   I would simply confirm what our precedent had
assumed: that there are exceptional circumstances when it
is appropriate for a reviewing court to correct an error for
the benefit of a party that has not cross-appealed the
decision below.

Indeed, the Court has already reached the very result
that it claims to disavow today.  We have long held that a
sentencing court confronted with new circumstances may
impose a stiffer sentence on remand than the defendant
received prior to a successful appeal.   See *Chaffin* v.
*Stynchcombe*, 412 U. S. 17, 23 (1973); *North Carolina* v.
*Pearce*, 395 U. S. 711, 719–720 (1969), overruled on other
grounds, *Alabama* v. *Smith*, 490 U. S. 794 (1989).   The
Court makes no effort to explain the analytical difference
between those cases and this one.   If a sentencing court
may rely on new circumstances to justify a longer sentence
on remand, why cannot one of the new circumstances be
the court's discovery (by dint of appellate review) that its
first sentence was based on an error of law?[2]

————————

[2] The Court finds it "hard to imagine a case in which a district court,
after a court of appeals vacated a criminal sentence, could properly
increase the sentence based on an error the appeals court left uncor-
rected because of the cross-appeal rule." *Ante,* at 16, n. 8.  Happily, we
need not imagine such cases, since they come before our courts every
day.

For examples, we have no further to look than the sentencing cases
remanded en masse following our recent decision in *United States* v.
*Booker*, 543 U. S. 220 (2005).   In *Booker*'s wake, it was common for
newly convicted defendants to appeal their sentences, claiming that
they received enhancements that they would not have received under
the advisory guidelines.   Many of those cases were remanded for
resentencing, and some defendants wound up with even longer sen-
tences on remand.  See, *e.g., United States* v. *Singletary*, 458 F. 3d 72,
77 (CA2) (affirming a sentence lengthened by 12 months following a
*Booker* remand), cert. denied, 549 U. S. 1047 (2006); *United States* v.
*Reinhart*, 442 F. 3d 857, 860–861 (CA5 2006) (affirming a sentence
lengthened from 210 months to 235 months following a *Booker*
remand).

Even today, the Court refuses to decide whether the cross-appeal requirement admits of exceptions in appropriate cases. While calling the rule "'inveterate and certain,'" *ante*, at 6 (quoting *Morley Constr. Co.*, 300 U. S., at 191), the Court allows that "there might be circumstances in which it would be proper for an appellate court to initiate plain-error review," *ante,* at 9; see also *ante,* at 5, n. 2. The Court's mandate is limited to a single class of cases—sentencing appeals, and then only when the appeal is brought by the Government.

The Court justifies the asymmetry in its decision by pointing to 18 U. S. C. §3742(b), which provides that "[t]he Government may not further prosecute [the] appeal without the personal approval of the Attorney General, the Solicitor General, or a deputy solicitor general designated by the Solicitor General." According to the majority, "[i]t would severely undermine Congress' instruction were appellate judges to 'sally forth' on their own motion to take up errors adverse to the Government when the designated Department of Justice officials have not authorized an appeal from the sentence the trial court imposed." *Ante,* at 7 (citation omitted).

The problem with this argument is that §3742(b) does not apportion authority over sentencing appeals between the Executive and Judicial Branches. By its terms, §3742(b) simply apportions that authority *within* an executive department. It provides that the "[t]he Government" may not "prosecute" the appeal without approval

---

These cases represent straightforward applications of the cross-appeal rule: The Government had not cross-appealed the sentence, so the reviewing court did not order the defendant's sentence lengthened. And yet the sentence *was* ultimately lengthened when the error was corrected on remand. The Court fails to explain the conceptual distinction between those cases and this one. If the Court permits sentencing courts to correct unappealed errors on remand, why does it not permit the courts of appeals to do the same on appeal?

from one of the listed officials. It says nothing about the power of the courts to correct error in the absence of a Government appeal. Had Congress intended to restrict the power of the courts, the statute would not stop "[t]he Government" from "prosecut[ing]" unauthorized appeals; instead, it would stop "the Court of Appeals" from "deciding" them.

The design that the Court imputes to the drafters of §3742(b) is inconsistent with the text in another important respect. Suppose that the District Court imposes a sentence below the range set forth in the Federal Sentencing Guidelines, and the Government files an authorized appeal on the ground that the sentence is unreasonable. Suppose further that the reviewing court discovers, to the surprise of both parties, that the District Court made a further error by overlooking a mandatory minimum to which the defendant was subject. The mandatory minimum would raise the defendant's sentence beyond what even the Government had wanted. Under the majority's theory, see *ante,* at 7, the reviewing court should not remand for imposition of the mandatory minimum, since the decision to seek the higher sentence belonged to the Government alone. But that conclusion is plainly at odds with the text of the statute, which imposes no limits on sentencing review once the named officials have signed off on the appeal.

Section 3742(b)'s limited effect on sentencing review implies that the statute was not designed to prevent judicial encroachment on the prerogatives of the Executive. It is more likely that Congress wanted to withhold from the Executive the power to force the courts of appeals to entertain Government appeals that are not regarded as sufficiently important by the leadership of the Department of Justice. Allowing the courts of appeals, in their discretion, to remedy errors not raised in a cross-appeal in no way trenches on the authority of the Executive. Sec-

tion 3742(b) may have also been designed to serve the Executive's institutional interests. Congress may have wanted to ensure that the Government maintained a consistent legal position across different sentencing appeals. Or perhaps Congress wanted to maximize the impact of the Government's sentencing appeals by giving high-level officials the authority to nix meritless or marginal ones. These institutional interests of the Executive do not undermine the Judiciary's authority to correct unlawful sentences in the absence of a Government appeal, and they do not justify the Court's decision today.

## IV

For the reasons given above, I would hold that the courts of appeals enjoy the discretion to correct error *sua sponte* for the benefit of nonappealing parties. The Court errs in vacating the judgment of the Eighth Circuit, and I respectfully dissent.[3]

---

[3] Neither the parties nor our *amicus* have addressed whether, under the assumption that the Court of Appeals enjoys discretion to initiate error correction for the benefit of a nonappealing party, the Eighth Circuit abused that discretion in this case. As framed by petitioner, the question presented asked only whether the cross-appeal requirement is subject to exceptions. Because the parties have not addressed the fact-bound subsidiary question, I would affirm without reaching it. See *United States* v. *International Business Machines Corp.*, 517 U. S. 843, 855, n. 3 (1996).